## THE M. D. WHEELER.

### (District Court, E. D. New York. March 30, 1900.)

1. TUG AND TOW—ABANDONMENT OF TOW WHEN AGROUND.

A tug which abandons a tow after she had grounded, leaving her in a position of danger, is liable for the injury resulting, of which the tug's negligence was a proximate cause.

2. SAME—SUIT BY TOW AGAINST TUG—MUTUAL FAULT.

A schooner in tow of a tug grounded about 2 p. m., when some 20 feet from her wharf, and was there abandoned by the tug. During the following night she listed, and injury resulted to the vessel and cargo. *Held*, in a suit to subject the tug to liability for the injury, that the same danger of injury, arising from the position of the schooner aground, which rendered the tug negligent in abandoning her, required her master to thereafter use diligent efforts to relieve her situation, and, it appearing that he took no measures to that end until the injury actually occurred, that the damages should be divided.

In Admiralty. Suit to recover damages alleged to have resulted to a tow from her negligent abandonment by the tug M. D. Wheeler while aground.

Rounds & Dillingham, for libelant.

James J. Macklin, for claimant.

THOMAS, District Judge. The master of the claimant's tug, the M. D. Wheeler, agreed to tow a schooner to Cropsey & Mitchell's wharf, at Gravesend, near Bath Beach. On Thursday, April 20, 1899, at about 2 p. m., while approaching the wharf, the schooner grounded; and when her head was some 20 or 25 feet away from the dock, and her stern still further away, the tug abandoned her, whereby she was left helpless, although there was an increasing flood tide, which at its full strength, about an hour thereafter, would offer some chance of getting her off. The master of the schooner protested against this desertion. Whether it was the contract or duty of the tug to place the schooner at the end of the wharf need not be determined. It was certainly the tug's duty to remain with her after she went aground, or attempt to put her in a position of safety; and the failure to do so is an approximate cause of the schooner's subsequent listing and filling, and the resulting damage. But did the master of the schooner contribute to the injury? After the schooner went aground, the abandonment of her by the tug was negligent, because it was inferable by the tug's master that injury might flow from that condition. Should the master of the schooner have drawn the same inference? If so, what did he do to avoid the threatened injury, or what could he do? Shortly after she went aground, Forward, her master, who was then absent, arrived. It was then about 3 p. m., and within an hour of high water. He could not discharge her cargo of laths without a customs permit,

and he went away for the purpose of obtaining the same, did not
return until about 7 o'clock in the evening, and thereafter went to
bed. Between 12 and 4 o'clock he awoke, and found that the ves-
sel was full of water around his berth, and that she had listed.
Some of her cargo of laths on the deck was swept off, and he put a
plank ashore and began discharging the deck cargo, in which em-
ployment the crew continued for a day or two following. On Mon-
day the tug Wheeler was again called to pump up the schooner, for
which she was separately paid; and thereupon the tug set the
schooner up to the dock, where she was discharged. This was what
the master of the schooner did do, and nothing done by him was
in its nature calculated to avoid the danger threatened at the time
the tug deserted the schooner. If the tug was negligent in failing
to apprehend that the schooner was left in a dangerous position,
whereby she might list and take water with injurious results, why
should the master have failed to draw the same inference? And
yet he did nothing to avert the perils, but calmly went to bed and
slept until the water gathered threateningly about him, when he
put forth the proper energy to save the cargo. Such energy was
due from him at 3 o'clock on the previous afternoon. If he could
not have obtained the services of a tug to get the schooner off at
high water, as it is probable he could not, he could have taken steps
to lighten the cargo or to unload the ship, or to have the tug stand
by and keep the schooner up, or he could have taken steps to make
fast his deck cargo, or perchance have used ropes to keep the schooner
from listing. It is not for the court to point out what should have
been done, but it is sufficient that the master was not privileged to
fold his arms and to go to sleep. If the tug was negligent, the
master was also, for the same precise reason. Hence the damages
and costs will be divided.